Good morning, Your Honors. Matthew McReynolds here on behalf of the plaintiff and appellant, Dr. Timothy Beuca. I'd like to reserve three minutes of my time for rebuttal, if I may. Sure. We're here this morning because the district court dismissed Dr. Beuca's religious accommodation claims without leave to amend. It did so on a finding that the WSU had an undue hardship as a matter of law. That finding departed from about 45 years of this circuit's precedence and is in conflict with the Supreme Court's decision just last term in Groff v. DeJoy. To be sure, the complaints that Dr. Beuca filed in state court, which were removed to federal court, were imperfect. That's how the Supreme Court described the police officer's complaint in Johnson v. City of Shelby when it reversed and remanded, holding that their employment discrimination claims should have been afforded an opportunity to be amended. We hope you do the same in this case. My understanding is there was an amendment, but it was back in state court under state rules. What would be the amendment here were you to go back with a leave to amend? Sure, Your Honor. A number of things. First of all, we would add in several facts that WSU already has in its possession. We would add more facts that Dr. Beuca included in his request for accommodation and submitted to them, such as the particulars of his faith and how it conflicted with the COVID-19 vaccination, as well as why he believed that he could have been accommodated and what he observed with other patient-facing professionals being accommodated even at the same hospital, as well as throughout the Seattle area. Do you have any obligation to plead about the lack of an undue hardship, or is that something for your opponent to have to raise affirmatively? It's an undue. It's an affirmative offense, Your Honor. So we do believe that it should not have been a basis for dismissal, especially in the first instance. And so the district court's finding of futility runs headlong into a number of this court's precedents. Beyond what's in our briefing, I'd like to draw the court's attention to a case on futility that I think is particularly helpful that was in WSU's briefing in their answering brief, and that was the case of United States v. UnitedHealthcare Insurance. And what this court did when it took a close look at futility in that case was to say, even under a higher particularity standard, keep in mind there are essentially three standards, the possibility standard in state court, the plausibility standard that we now have under Rule 12, and the higher particularity standard under Rule 9 for a few types of cases, not including this one. And so what this court did, even on the higher particularity standard, was to reverse and hold it to be an abuse of discretion for the court to have found futility when on a fourth amended complaint the plaintiff had not been given an opportunity. And the court explained why it takes that approach. And the reason is that it's one thing if a litigant has three bites at an apple and still can't come up with the facts to plead its case. It's another thing, I'm sorry, but a second reason why this court has done what it's done is to prevent plaintiffs from coming to court in search of an unknown wrong to utilize expensive discovery mechanisms to find that. That's not what we have in this case. WSU already has in its possession the essential facts of this case. They have Dr. Buca's submission of his request. We have their response to that request, and that's one of the first things that we would be exchanging as part of the initial disclosures. And I think that's why when you take a close look at their answering brief, and I missed this the first few times that I read it, they're not arguing that they don't know the facts of Dr. Buca's beliefs. What they're arguing is essentially that he didn't use the magic words that he should have used in his pleading to tell them what they already knew. Well, one thing they may argue is that the undue hardship is substantial even under Groff, and the district court had some sort of, even though the district court used the older standard, had some language sort of consistent with that. How do you address that? Sure, I agree with that, Judge Bress. Although the court could reverse and remand just based on the fact that the district court utilized the de minimis standard, if you did that, I think we would be right back here, and the district court would be very likely to just say same ruling except under the new standard in Groff. So I do think it would be prudent for the court to go ahead and go beyond that step of just reversing based on the use of the de minimis standard. Well, what then are you asking us to do? We're asking you to reverse and remand and to allow the case to go forward as undue hardship Title VII cases have done for the last 40-plus years. And so if you look back over the court's leading precedents, especially with Title VII religious discrimination cases, nearly all of them reached this court after summary judgment or after a jury or bench trial. There's only one exception that I found when the court has approved undue hardship as a matter of law in a religious discrimination case, and that was in Sutton v. Providence St. Joseph, where the court said there was clearly a clash and a conflict between what the employee was asking to do, which was not supply Social Security numbers, and what federal law required of his employer. We don't have that here because the mandated issue provided for accommodation. Now, what you're suggesting is even if you were given leave to amend and you amended, that the district court would still invoke basically the determination on undue hardship? Some speculation on my part, Your Honor, but I do believe that would be what would most likely happen. Although if we were able to amend, we would add significantly more facts to what we've pled. Do you want to save the last few minutes for rebuttal? I would like to. Thank you, Your Honor. Thank you. Thank you. Good morning. Good morning, Your Honor. May it please the court. Zach Bacalus for Applee Washington State University. The district court correctly dismissed Dr. Buca's complaint for two reasons. First, its threadbare allegations do not establish any of the required elements of a prima facie case, which this court in Bolden Harge held was required to survive the pleadings under a motion to dismiss. Corks has been reluctant over the years to inquire into the bona fides of expressed religious beliefs. What did WSU need to know to determine that Dr. Buca's concerns about the mandatory vaccination policy were in fact legitimate religious concerns? Well, despite a long-held reluctance to inquire into religious beliefs, there are thousands of these cases being litigated across the country, and many courts are dismissing on the basis that even on the pleadings, plaintiffs do not state a bona fide conflict between their religious beliefs and the vaccination requirement in question. So what should he have pled that he didn't? He should have pleaded anything about what his beliefs are. I mean, unlike many complaints where they at least contain — Side passages from the King James version of the Bible or the Koran or what? Certainly not, Your Honor. This complaint does not contain a single word describing what Dr. Buca's beliefs are. So we can start there. He should have said, I believe X. It conflicts with the vaccination requirement because of Y. That's not — But even if that's true, why shouldn't he be allowed to amend? We didn't ask for dismissal with prejudice on that basis. We agree that if that were the only basis for dismissal, giving an opportunity to amend would have been entirely appropriate. That's what we asked the district court. So you're not opposed to a remand for amendment? Not on the prima facie case. The undue hardship defense, however, is an absolute bar. And the district court here correctly found that it was obvious on the face of the complaint and judicially noticeable facts. This policy has now been rescinded, correct? Yes. The proclamation, the vaccination requirement has been rescinded. And I believe the Ninth Circuit has upheld cases in which injunctions were sought based upon the fact that the policy has been rescinded. What has been the practice, if you know, with respect to reinstatement of employees who refuse the mandatory vaccination requirement? At WSU or generally? At your client. I'm not aware of any. Around the State, you have seen some reinstatements in local jurisdictions. Yes. The Bacon case involves that to some degree, of course. But here, Dr. Buca is seeking damages. So there's no question of mootness in this case under Title VII, which entitles prevailing plaintiffs to damages. So the critical point here is that Groff did articulate a different standard than the prevailing case from Hardison, but it did so in a unique context that's quite different from this case. It involved a financial cost to the employer. Both Groff and Hardison were Sabbatarian cases where the employee sought to take his Sabbath off as a workday. So the entire question in Groff was how much money is too much money for the post office to have to incur to allow Mr. Groff to have his Sunday's off. Here, it's a totally different character of undue hardship. The undue hardship is the risk, the increased risk that an unvaccinated primary care physician would spread COVID-19, a deadly virus, to his colleagues and to patients, undermining the fundamental mission of the hospital and the medical system in which he works. As we now know that the science has sort of drifted down around vaccines, being vaccinated doesn't mean you can't get COVID and that you can't transmit COVID. But did this particular policy allow employees like Dr. Buca to get routinely tested as an alternative to vaccination? That's not on the record, but my understanding is that for direct patient care facing caregivers, no, that if they were going to be in a hospital attending to patients engaging in direct patient care, that an accommodation was not possible that would allow them to do that. My difficulty with this is that these may be good arguments, but on a motion to dismiss, I have some questions as to whether that would be the right way to resolve this without more understanding about this plaintiff, about your client, and about the work environment. Understood. There are two different questions the court really has to answer in this case with respect to undue hardship. The first question is the sort of substantive question, which is, is the risk that an employee, specifically a physician, that the increased risk that he would spread COVID to patients and caregivers, does that constitute an undue hardship under Groff? Is it a substantial hardship in the conduct of the employer's business? If so, the court has to then answer a second question, which is under Bold and Harge, did the complaints allegations and the judicially noticeable facts here establish that obvious bar of undue hardship in this case? And we would argue that the answer to both questions is yes. Groff clearly holds that impacts on co-workers can be an undue hardship. Justice Sotomayor's concurring opinion makes that even more emphatic, joined by Justice Jackson. This Court in Batia and Balint and many other cases has held that co-worker impacts, not just financial impacts, but impacts on their health and safety, even kind of moral impacts. The court put it best, I think. What's troubling here is in the order the judge says no accommodation was possible. In the context of this case, Your Honor. Well, I understand that, but it seems to me that although you've appropriately pointed out that Groff came up in a different context, Groff was pretty clear that these are fact-specific inquiries. So sort of playing off of Judge Bress's question, why isn't that best decided not on this motion to dismiss? Well, what more facts would need to be here? For example, Dr. Buca has not said that he would request an accommodation where he could be a telemedicine doctor or something like that, or that he would take a leave of absence. Let him amend the complaint and then we'll know. Well, he's never. Counsel just represented that the accommodation he was seeking was to continue to be a patient-facing accommodations. So the idea that during the height of the Delta surge, during the COVID pandemic, that an unvaccinated physician would be treating patients directly and possibly spread COVID to them would undermine the basic, fundamental tenet of the medical profession, do no harm. That's a substantial hardship. And Dr. Buca. I mean, this is now getting well outside what's in front of us, but hospitals and other places seem to have different policies on these things. Workplaces have different policies. You're asking us to make a judgment essentially as a matter of law that any time any doctor wants to work in a hospital and doesn't want to get vaccinated, automatically that person can be terminated. I mean, you can make that argument, but all we're looking at is a complaint. No, Your Honor, unlike what Dr. Buca says and what Amicus says here, it's not a per se sweeping rule that's going to resolve this case. There are five aspects of Dr. Buca's circumstances that make this case unique and distinguish it from other cases even in this circuit. So the fact that he's a physician, so no doubt that he's engaging in in-person care, doesn't say otherwise. Second, the timing of it. And to address Judge Hawkins' point earlier, the later science is irrelevant to the question of undue hardship, which must be examined from what the employer knew at the time the accommodation decision was made. That's a critical point. This was in October of 2021 at the height of the Delta surge.  How do we know what the employer knew at that time based on the motion to do this? Based on judicially noticeable facts. I mean, it's the information that was available to the employer, so you could have kind of a constructive knowledge standard. Did Dr. Buca say, I will accept no accommodation? That's not in the record, but he's had an opportunity now for several years of briefing. And may have again. I'm sorry? And may have again. But it's incumbent upon him. We took the position, look, we can't accommodate you in the hospital. That's our motion to dismiss. If he believed that some other accommodation were possible, telemedicine, for example, he should say that in his response to the motion to dismiss, in a motion for reconsideration, in his opening brief, in his reply brief, today in argument. He's never suggested that that type of accommodation was available. So the only question before this court is whether in his circumstances, an unvaccinated primary care physician working during the Delta surge in a hospital, treating patients, and this is a really important part as well, he never challenged the judicial noticeability of the CDC study that Washington State University cited and that the district court took judicial notice of. So, for example, in the McDonald case out of Oregon, very similar facts to this one. It's a nurse engaging in direct patient care instead of a doctor. In that case, the plaintiff objected and said, no, I don't think that the CDC study is accurate. Judge Emmergat said, okay, I guess I can't take judicial notice of that. Dr. Buca did not object to the judicial noticeability of the CDC study. He said, oh, you can't take judicial notice in a motion to dismiss without converting it to a motion for summary judgment. That's just wrong as a matter of law. The district court also denied leave to amend finding undue delay and prejudice, and that was not an abuse of discretion, particularly where Dr. Buca did not even ask for leave to amend. For those reasons, we ask the court to affirm the district court in all respects, including the dismissal with prejudice and denial of leave to amend. Thank you, Mr. Picalis. And we'll hear a rebuttal. Mr. McReynolds. Thank you, Your Honors. There's an easy way and a hard way to resolve this. What we're asking you to do with reversal would not involve delving into the thorniest issues of the COVID-19 litigation that's now in the pipeline. Should you affirm the decision below on any grounds? I don't see how it can possibly avoid affecting hundreds of other plaintiffs who are currently litigating, who have gotten past the motion to dismiss stage, because many of the district judges in this circuit have seen essentially what we've seen in these cases. They need to be allowed to develop. They need to be allowed, at least through discovery, into the summary judgment phase. All of those cases are potentially at stake here. We think it would be a manifest injustice to Dr. Buca not to permit him to have leave to amend, but surely all the other litigants with similar cases should have their day in court as well. We briefed the judicial notice issue, so I won't belabor that. We think that WSU is reading a bit into the decision below, which never actually stated that it was taking judicial notice of anything. We've explained from this court's COJA decisions why we think that's particularly problematic. And at bottom, we would present that WSU is arguing this as a game of skill or a game of chance where one misstep by a counsel jeopardizes their case. The Supreme Court addressed that in particularly Johnson v. City of Shelby, and this court has had its own eloquent responses to that. But the Supreme Court has made clear that's not how we handle employment discrimination cases in particular. Dr. Buca, on behalf of himself as well as many other similarly situated litigants across the circuit, respectfully would ask you to reverse and remand. Thank you, Your Honors. Thank you, Mr. McReynolds, and we thank both counsel for the helpful briefing and arguments. This matter is submitted.
judges: HAWKINS, McKEOWN, BRESS